**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| VALERIE ELLIS,<br><br>Plaintiff,<br><br>v.<br><br>WILBUR L. ROSS, JR., SECRETARY,<br>UNITED STATES DEPARTMENT<br>OF COMMERCE,<br><br>Defendant. | ) | Case No. 1:17-cv-673<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Valerie Ellis, by her undersigned counsel, complains of Defendant U.S. Department of Commerce, as follows:

## NATURE OF THE CASE

1. This is an action to recover damages for Defendant's unlawful sex discrimination and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims because Defendant formerly employed Plaintiff in the District of Columbia ("DC"), and the alleged unlawful acts took place here.

3. Venue is proper because Defendant formerly employed Plaintiff in DC.

## THE PARTIES

4. During the relevant time period, Plaintiff worked for Defendant and was an employee pursuant to Title VII.

5. Defendant Wilbur L. Ross, Jr., is named in his official capacity as Secretary of the U.S. Department of Commerce.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.

7. Plaintiff filed an equal employment opportunity ("EEO") complaint with Defendant's Office of Civil Rights ("OCR") on May 9, 2016.

8. Plaintiff received Defendant's final agency decision ("FAD") on January 19, 2017. This lawsuit is filed within 90 days of the date Plaintiff received the FAD.

## FACTS

### *Plaintiff is a member of a protected class.*

9. Plaintiff is female.

10. At all times relevant to this compliant, Defendant was aware that Plaintiff is female, based on her physical appearance.

### *Plaintiff returned to her employment with Defendant.*

11. Plaintiff began working for Defendant in 1998 as an International Trade Specialist.

12. In 2001, Plaintiff left the federal service and entered the private workforce.

13. In February 2015, Plaintiff accepted a job offer to return to her employment with Defendant in the Operations office, Enforcement and Compliance ("E&C"), International Trade Administration.

14. Shortly after beginning her job with E&C, Senior Economist Albert Hsu (male), with whom Plaintiff had worked closely between 1998 and 2001, recruited Plaintiff to transfer from E&C's Operations office to the Policy office, where he worked.

15. Accordingly, in or around July 2016, Plaintiff applied for the position of Senior Policy Analyst

(GS-1101-13/2) in the Policy office. Defendant offered Plaintiff the position, which she accepted, effective July 13, 2015.

16. During her tenure, Hsu subjected Plaintiff to a series of sexist remarks, unfairly criticized her, and held her to a higher standard than her male counterparts.

*Plaintiff's supervisor made sexist remarks.*

17. In July 2016, shortly after Plaintiff began working with him, Hsu sent an email to Senior Policy Analyst Donna Kinsella and Plaintiff, in which Hsu commented on Kinsella "batting her eyelashes and playing the southern belle." Hsu admitted to making this comment during Defendant's internal investigation of Plaintiff's EEO complaint.

18. On another occasion, Hsu stated to Plaintiff, "I could get in trouble, but I believe women should stay at home with their children."

19. Soon after, Hsu warned Plaintiff not to seem "blonde," which he later admitted during Defendant's internal EEO investigation. Plaintiff never heard Hsu telling male employees not to seem "blonde."

20. Hsu frequently commented to Plaintiff that two other female employees, Office of Policy Director Carole Showers, and Deputy Assistant Secretary for Policy and Negotiations Lynn Fisher Fox, were "in competition," so Plaintiff needed to be careful not to side with one or the other. Hsu never referred to male employees in this manner.

21. In early February 2016, Plaintiff sent an email to Hsu regarding taking leave for childcare purposes. Shortly after, Hsu verbally responded to Plaintiff's email by asking "if you working mothers have ever heard of a babysitter." Hsu further elaborated that he had "a traditional family," and referred to his wife as a "stay at home wife."

22. During Defendant's EEO investigation, Hsu neither admitted nor denied making the babysitter

comment, but he said that if he did make the comment, he was probably just joking.

*Plaintiff's supervisor criticized her and ordered her to make his travel arrangements.*

23. Throughout her tenure, Hsu berated Plaintiff for unreasonable and immaterial issues, such as failing to memorize a single sentence out of a 40-page report in or around November 2015.

24. Hsu also expected Plaintiff to perform secretarial functions, such as making his (Hsu's) travel arrangements, although doing so was not part of Plaintiff's performance plan.

25. On information and belief, Hsu did not require Plaintiff's predecessor, Christopher Muntz (male), to make Hsu's travel arrangements.

26. Another employee told Plaintiff that employees were responsible for making their own travel arrangements, further indicating that Hsu deviated from Defendant's regular practice by requiring Plaintiff to make Hsu's travel arrangements.

27. When Plaintiff asked why she was expected to make Hsu's travel arrangements and perform secretarial functions that were outside of her position description, Hsu explained that he needed her help because "we men on the trip are babies."

28. Deputy Assistant Secretary for Policy and Negotiations stated in her EEO declaration, "I believe, Mr. Hsu tasked [Plaintiff] with the travel logistics because she is a woman."

29. Despite Plaintiff's reservations about performing secretarial functions, she followed Hsu's instructions and completed the tasks to the best of her ability.

30. Hsu also granted additional Alternative Work Schedule benefits to female employees who conformed to stereotypical secretarial roles, including Plaintiff's colleague, Shauna Biby.

31. In or around November 2015, Mr. Hsu requested that Plaintiff accept "off the books comp time" instead of a cash bonus, explaining that Plaintiff did not have kids in college like Hsu did. Plaintiff believes Hsu made this comment because of her sex.

*Hsu terminated Plaintiff's employment.*

32. On February 18, 2016, five days before the expiration of the probationary period, Hsu gave Plaintiff a written memorandum stating that her employment was terminated.

33. The memorandum alleged that Plaintiff failed to develop "substantive input" (*i.e.*, "background notes, talking points, comments and questions") in preparation for a work trip to Vietnam; failed to manage and coordinate travel arrangements for male employees; and lied about the date on which she applied for her passport.

34. Defendant's reasons for firing Plaintiff were false.

35. Plaintiff satisfactorily performed her job duties, including developing the substantive input for the Vietnam trip. She conducted extensive research, attended numerous meetings, and reached out to stakeholders to collect information and develop the work product. In fact, Plaintiff received several bonuses during her five-month tenure in the Policy office, including a cash bonus in December 2015, which was the time Hsu claimed she was not performing to acceptable standards.

36. Contrary to what Hsu stated, Plaintiff did not fail to make travel arrangements for male employees or otherwise jeopardize their ability to travel. Plaintiff followed Hsu's instructions to coordinate other employees' travel, which was not identified in Plaintiff's performance plan and was inconsistent with Defendant's regular practice.

37. Nor did Plaintiff lie about the date on which she applied for her passport. She applied for her passport in December 2016; she did not wait until January 6, 2017, as Hsu alleged.

**COUNT 1**

(42 U.S.C. § 2000 – Discrimination on the Basis of Sex)

38. Plaintiff repeats and realleges paragraphs 1–37, above, as if fully set forth herein.

39. Defendant discriminated against Plaintiff on the basis of sex.

40. By and through its conduct, Defendant violated Title VII.

41. Defendant's actions were intentional, reckless, and malicious.

42. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

**COUNT 2**

(42 U.S.C. § 2000 – Hostile Work Environment on the Basis of Sex)

43. Plaintiff repeats and reallages paragraphs 1–42, above, as if fully set forth herein.

44. Defendant subjected Plaintiff to harassment and a hostile work environment on the basis of sex.

45. By and through its conduct, Defendant violated Title VII.

46. Defendant's actions were intentional, reckless, and malicious.

47. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

**JURY DEMAND**

Plaintiff demands a trial by jury on all Counts.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on Counts 1 and 2, and award Plaintiff lost wages and benefits; compensatory damages in the amount of $300,000, or in an amount to be determined at trial, for pain and suffering and emotional distress; pre- and post-judgment interest; costs; attorneys' fees; and any such other relief as is just and proper.

Date: April 17, 2017

RESPECTFULLY SUBMITTED,

Alan Lescht and Associates, P.C.

By: /s/

Alan Lescht [441691]
Sara McDonough [1022641]
1050 17th Street, NW, Suite 400
Washington, DC 20036
Tel: (202) 463-6036
Fax: (202) 463-6067
alan.lescht@leschtlaw.com
sara.mcdonough@leschtlaw.com
*Counsel for Plaintiff*